## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dan Stormer | Eric Amdursky |
| Brian Olney | Margaret Carter |

**Proceedings:**   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (dkt. 63, filed April 13, 2016)

## I.    INTRODUCTION

On October 29, 2015, plaintiff Keno V. Thomas ("plaintiff") filed this action in the Los Angeles County Superior Court against defendants Starz Entertainment ("Starz"); Michael Thornton ("Thornton"); Liberty Media Corp.; Starz; Starz, LLC; Chris Albrecht ("Albrecht"), and Does 1 through 20 (collectively, "defendants").[1] Dkt. 1, Ex. A, ("Complaint"). On November 30, 2015, defendants removed this action to this Court on the basis of federal question and diversity jurisdiction. Dkt. 1.

In brief, plaintiff, who is a former executive of the television network Starz, alleges that defendants retaliated against and ultimately fired him in violation of state and federal law. Specifically, plaintiff's original complaint asserted claims for (1) Retaliation in Violation of California Labor Code § 1102.5(b); (2) Retaliation in Violation of California Labor Code § 1102.5(c); (3) Retaliation in Violation of California Government Code § 12940(h); (4) Retaliation in Violation of 42 U.S.C. § 1981; (5) Wrongful Termination in Violation of Public Policy; (6) Failure to Prevent Retaliation in Violation of California Government Code § 12940, et seq.; and (7) Intentional Infliction of Emotional Distress ("IIED"). See generally Complaint.

---

[1] On February 5, 2016, plaintiff voluntarily dismissed defendants Liberty Media Corp., Starz, and Starz LLC. from this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|----------|-------------------------|------|---------------|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

On December 7, 2015, defendants filed a Rule 12(b)(6) motion to dismiss (i) plaintiff's first and second claims for retaliation in violation of the California Labor Code; (ii) plaintiff's fourth claim for retaliation in violation of 42 U.S.C. § 1981, and (iii) plaintiff's seventh claim for intentional infliction of emotional distress. Dkt. 21. In an order dated February 29, 2016, the Court dismissed without prejudice plaintiff's first and second claims for retaliation in violation of Labor Code § 1102.5(b) and (c), and similarly dismissed without prejudice plaintiff's seventh claim for intentional infliction of emotional distress.[2]

On March 30, 2016, plaintiff filed the operative first amended complaint ("FAC"). On April 13, 2016, defendant filed the instant motion to dismiss the first, second, and seventh claims in the operative FAC. Dkt. 63 ("Motion"). On May 9, 2016, plaintiff filed an opposition to the instant motion. Dkt. 67 ("Opp'n"). On May 23, 2016, defendant filed a reply. Dkt. 68 ("Reply"). On July 11, 2016, the Court provided the parties with a tentative order and held oral argument on the instant motion.

Having carefully considered the parties' arguments, the Court concludes as follows.

## II.    BACKGROUND

Plaintiff alleges the following facts in his FAC:

In 2004, plaintiff was hired by defendant Starz as its Senior Vice President of Sales and Affiliate Marketing. FAC ¶ 14. In this role, plaintiff held management responsibility for Starz's accounts with several of its distributors, including DirecTV, Dish Network, Verizon FiOS, and AT&T U-verse. Id. ¶ 15. Plaintiff states that throughout his employment at Starz he has been troubled by what he perceives as a lack of diversity

---

[2] In its February 29, 2016 order, the Court also dismissed defendant Albrecht from this action without prejudice, and further granted in part and denied in part defendants' Rule 12(f) motion to strike portions of the complaint. Shortly thereafter, on March 1, 2016, based upon a stipulation filed by the parties pursuant to Federal Rule of Civil Procedure 41(a)(1), the Court dismissed defendant Albrecht from the action without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

among Starz's senior level management.  Id. ¶ 13.  For example, plaintiff asserts that, at the time of his termination, he was the only senior-level African-American at Starz.  Id. Plaintiff claims that, as a senior executive at Starz, he advocated on behalf of women and minorities by, among other things, speaking to human resources about the lack of diversity at Starz and prioritizing the hiring of women and minorities in his department. Id. ¶ 20.  Nonetheless, plaintiff states that these actions exposed him to ridicule at the hands of Starz's management.  Id.

On August 16, 2013, defendant Thornton was named Starz's Chief Revenue Officer and became plaintiff's direct supervisor.  Id. ¶ 18.  In 2013 and 2014, plaintiff raised concerns to the management of Starz regarding two practices that he believed were unlawful.  First, in January 2013, Starz announced the appointment of Derek Chang, a former Executive Vice President at DirecTV, to its board of directors.  Id. ¶ 24(b).  As detailed more fully *infra*, plaintiff informed Starz management, including defendant Thornton, that he believed Chang could use confidential information he had obtained from DirecTV, such as DirecTV's proprietary information concerning its pricing and licensing fees, for his own benefit.  Id. ¶ 24(c). Plaintiff states that the management personnel to whom he raised these concerns agreed with plaintiff that there may be a risk of Chang improperly using DirecTV's confidential information for his own benefit.  Id. However, when plaintiff raised the issue again a few months later, Thornton threatened to fire plaintiff if he ever spoke about the matter again.  Id. ¶ 24(f).

Second, plaintiff alleges that he disclosed to Thornton that he believed Starz had obtained a favorable deal with one of its major distributors, Comcast, as a result of illegal insider manipulation and unfair influence on a pending merger.  Id. ¶¶ 26-34. Specifically, plaintiff alleges that, in early 2014, "Comcast's affiliate carriage contract with Starz was set to expire" and that "it was . . . anticipated among Starz'[s] executives that Comcast would . . . seek to negotiate a new affiliate carriage contract."  Id. ¶ 27. Plaintiff further alleges that, at the same time, Comcast and Time Warner Cable, another distribution company, were attempting to obtain federal approval for a merger of their two companies.  Id. ¶ 28.  Plaintiff contends that "the FCC and Department of Justice were scrutinizing the proposed Comcast and Time Warner Cable merger," and that, "[i]n an effort to obtain governmental approval for the merger," Comcast and Time Warner Cable proposed to sell millions of subscribers to a third distribution company, Charter Communications.  Id.  Plaintiff alleges that a member of the Starz board of directors, non-party Gregory Maffei, who is also on the Charter board of directors, "conspired" with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

defendant Thornton "to manipulate the Charter/Comcast deal"—specifically, "Thornton boasted [to plaintiff during dinner one evening] that he had urged Mr. Maffei to call Comcast and demand that, as a clandestine part of the Charter/Comcast deal, Comcast extend its Starz affiliate carriage deal at a loss for Comcast and at a great profit for Starz." Id. ¶ 31.   Plaintiff states that when he learned about these events from defendant Thornton, he became concerned that such conduct may have violated the law and that Maffei's actions in particular breached his fiduciary duty to Charter and thus violated California Corporations Code § 309(a).  Id. ¶ 32.  However, when plaintiff "approached [defendant] Thornton and raised concerns about the legality of Comcast's deal with Starz," Thornton "sternly warned [plaintiff] to never repeat what he just said because it could cost [plaintiff] his job."  Id. ¶ 34.

In Fall 2013, Starz and DirecTV entered into negotiations because their existing contract was set to expire on August 31, 2014.  Id. ¶ 35.  Plaintiff alleges that Thornton repeatedly threatened to fire plaintiff, who was largely responsible for the DirecTV negotiations, if the deal was not completed by August 31, 2014.  Id.  By February 2014, Starz and DirecTV had not concluded their negotiations and DirecTV began removing Starz from its marketing packages.  Id. ¶ 36.  Plaintiff alleges that by mid-2014, Thornton and other Starz executives began excluding plaintiff from meetings and emails regarding the DirecTV negotiations.  Id. ¶ 39.  Plaintiff states that negotiations between Starz and DirecTV intensified in the Summer of 2014.  Id. ¶ 41.  But plaintiff avers that he was left out of key meetings and emails, and that Thornton negotiated directly with DirecTV on behalf of Starz.  Id. ¶¶ 41-43.  By mid-August 2014, plaintiff had been so excluded from the DirecTV negotiations that Thornton refused even to tell plaintiff about Starz's negotiations strategy with DirecTV.  Id. ¶¶ 46-47.

Ultimately, on August 22, 2014, Starz and DirecTV executed an agreement extending their contract.  Id. ¶ 49.  The following month, during a meeting on September 4, 2014, defendant Thornton allegedly directed Kara Tefft, Starz's Director of Finance, to order Mr. Thomas to "arbitrarily inflate [certain] revenue figures and subscriber numbers" for a presentation to Starz's Board.  Id. ¶ 51.  As detailed more fully *infra*, plaintiff refused the order, believing that acting upon Tefft's directive "would have violated numerous state and federal statutes prohibiting the knowing falsification of a corporation's documents," including California Corporations Code § 2254; California Corporations Code § 2255(b); California Corporations Code § 1507; and Section 13(b)(5)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

of the Securities Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1.  FAC ¶ 53.

Plaintiff further states that beginning in the Summer of 2014, he "began experiencing significant emotional distress and health deterioration, in large part due to . . . Starz'[s] deplorable treatment of him."  Id. ¶ 58.  During the week of September 8, 2014, plaintiff states that his health "reached a breaking point" forcing him to miss work.  Id.  Shortly thereafter, plaintiff took a three-week medical leave of absence for alleged depression and anxiety.  Id. ¶ 59.  The week that plaintiff returned from his medical leave, Starz terminated his employment.  Id. ¶ 60.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a  cognizable legal theory.' "  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

In the instant motion, defendants seek to dismiss claims one and two for retaliation in violation of California Labor Code §§ 1102.5(b) and 1102.5(c), respectively, as well as claim seven for intentional infliction of emotional distress. For the reasons explained below, the Court (1) GRANTS defendants' motion as to plaintiff's section 1102.5(b) claim for retaliation based upon disclosure of unlawful conduct, (2) DENIES the motion as to plaintiff's section 1102.5(c) claim based upon retaliation for refusal to participate in unlawful conduct, and (3) GRANTS the motion as to plaintiff's IIED claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | | Date | July 11, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | | |

**A.     Claims One and Two for Retaliation in Violation of California Labor Code §§ 1102.5(b)-(c)**

Plaintiff's first and second claims are for retaliation in violation of California Labor Code § 1102.5(b) and (c), respectively.  Section 1102.5(b) prohibits retaliation against an employee for *disclosing information* regarding "a violation of [a] state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation."  Similarly, Section 1102.5(c) prohibits retaliation against an employee for *refusing to participate* in "a violation of [a] state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation."

"To establish a prima facie case for retaliation under section 1102.5, an employee must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004).  As is relevant here, a protected activity includes "the disclosure of or opposition to a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.' " La v. San Mateo Cnty Transit Dist., 2014 WL 4632224, at *4 (N.D. Cal. Sep. 16, 2014) (citing Edgerly v. City of Oakland, 211 Cal. App. 4th 1191, 1199 (2012) (internal quotations marks and citations omitted)).

The Court previously dismissed without prejudice both of plaintiff's section 1102.5 claims "because plaintiff ha[d] failed to identify any underlying statute, rule, or regulation on which his retaliation claims are based . . . ." Dkt. 54, at 7.  In the operative FAC, plaintiff has now attempted to identify specific statutes, rules, or regulations on which his retaliation claims are premised.  In light of these amendments, the Court again considers whether plaintiff has plausibly stated his claims.

**1.     Claim One for Violation of California Labor Code § 1102.5(b)**

California Labor Code section 1102.5(b) prohibits retaliation against an employee for *disclosing information* regarding "a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation . . . if the employee has *reasonable cause* to believe that the information *discloses a violation* . . . ." Cal. Lab. Code § 1102.5(b) (emphasis added).  Here, plaintiff alleges that he was terminated in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

violation of section 1102.5(b) because of his statements regarding two topics: (1) the potential conduct of Starz board member Derek Chang, and (2) the alleged conduct of Starz board member Gregory Maffei.

### a.    Allegations Regarding David Chang

Plaintiff first alleges that he reported to his direct supervisors, Ed Huguez and defendant Thornton, his "concern" that "Starz Director [Derek Chang] had confidential information that would likely be unlawfully disclosed and/or used" in violation of the Uniform Trade Secrets Act ("UTSA"), California Civil Code §§ 3426, et seq., and California unfair competition law, California Business and Professions Code §§ 17200, et seq.  See FAC ¶¶ 65-66.

Specifically, plaintiff alleges that prior to joining Starz's board of directors, Derek Chang had, among other things, worked for DirecTV as Executive Vice President of Content Strategy and Development, such that "Chang's appointment to the Starz Board led [plaintiff] to reasonably believe that Chang *would engage* in the unlawful misuse of trade secrets."  FAC ¶ 24 (emphasis added).  According to plaintiff, "when Chang left his position as a senior executive at DirecTV to join the Starz Board, he was literally switching sides in the middle of the [respective] companies' high stakes negotiations." Id. ¶ 24(a).

Ultimately, however, based upon a review of the allegations in the operative complaint, the Court finds that plaintiff does not appear to have "disclosed," flagged, or complained of anything that was not publicly known and fully understood by those with whom he discussed his concerns.  The verb "disclose" is not specifically defined in California Labor Code section 1102.5; however, the California Court of Appeal for the Fourth District has construed this statute and "read the term 'disclosure' consistent with its 'ordinarily understood meaning.' "  Mize-Kurzman v. Marin Cmty. Coll. Dist., 202 Cal. App. 4th 832, 858 (2012) (quoting Huffman v. Office of Pers. Mgmt, 263 F.3d 1341, 1349 (Fed. Cir. 2001)).  Specifically, the court explained that "[t]he term 'disclosure' means *to reveal something that was hidden and not known*."  Mize-Kurzman v. Marin Cmty. Coll. Dist., 202 Cal. App. 4th 832, 858 (2012) (citation and internal quotation marks omitted) (emphasis added).  In construing the term as such, the court in Mize-Kurzman "agree[d] with [the Federal Circuit's decision in Huffman] and other federal cases that have held that the report of information that was already known did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|----------|-------------------------|------|---------------|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

constitute a protected disclosure." (citing <u>Huffman</u>, 263 F.3d at 1349-50; <u>Meuwissen v. Dep't of Interior</u>, 234 F.3d 9, 12-13 (Fed. Cir. 2000); <u>Francisco v. Office of Pers. Mgmt</u>, 294 F.3d 1310, 1314 (Fed. Cir. 2002)).

Subsequently, the California Court of Appeal for the Second District expressly "accept[ed] the dictionary definition of 'disclosure' as used by the court in <u>Mize-Kurzman</u>."  <u>Hager v. Cty. of Los Angeles</u>, 228 Cal. App. 4th 1538, 1550 (2014) (stating that "the <u>Mize-Kurzman</u> court gave the statutory term its plain and commonsense meaning" and "held [that] reporting information that already was known to the employer did not constitute a protected disclosure").  The Court here accordingly reads the term "disclosure" in the same manner as the Courts of Appeal in <u>Mize-Kurzman</u> and <u>Hager</u>.

With this construction in mind, the Court finds that plaintiff did not actually "reveal something [about Chang] that was hidden and not known."  <u>Mize-Kurzman</u>, 202 Cal. App. 4th at 858.  According to the FAC, the "[n]ews that Chang had switched sides in the midst of DirecTV's negotiations with Starz provoked *widespread consternation at both companies*," such that "[n]umerous executives at DirecTV expressed concern over Chang's move, *as did senior executives at Starz* including Mr. Thomas, Thornton, and Ed Huguez, who was Mr. Thomas's direct supervisor at the time."  FAC ¶ 24(c) (emphasis added).  After learning of Chang's appointment to the Board, plaintiff "explained to Huguez and Thornton that he believed Chang would use his knowledge of DirecTV's and Starz's pricing, licensing fees, and other confidential information for his personal benefit."  <u>Id.</u> ¶ 24(f).  Indeed, "Mr. Huguez shared [plaintiff's] specific concerns that Chang might improperly utilize and disclose confidential information, and expressed these concerns to Glenn Curtis, Starz's president."  <u>Id.</u> ¶ 24(c).  While plaintiff alleges that "Chang had an opportunity and strong motivation to make improper use of DirecTV's and Starz's confidential information," <u>id.</u> ¶ 24(d), plaintiff does not plausibly allege that he *disclosed* any of Chang's actual or imminent wrongdoing; plaintiff merely believed that Chang "might do [such wrongdoing]" on account of his previous position at DirecTV.  <u>Id.</u> ¶ 24(e).

However, the California Uniform Trade Secrets Act "requires an '[a]ctual or threatened misappropriation . . . .'"  <u>FLIR Sys., Inc. v. Parrish</u>, 174 Cal. App. 4th 1270, 1279 (2009) (quoting Cal. Civ. Code § 3426.2).  "[A] 'threatened misappropriation' means a threat by a defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates imminent misuse."  <u>Id.</u>; <u>see also Les Concierges, Inc. v.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

<u>Robeson</u>, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) (Chesney, J.) ("[A] threat of misappropriation cannot, as a matter of California law, be inferred from the fact [the defendant-employee], upon voluntarily terminating his employment with [the plaintiff-employer], immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [the plaintiff-employer] . . . "); <u>Pellerin v. Honeywell Int'l, Inc.</u>, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) ("Alleging mere possession of trade secrets is not enough."). As defendants note, plaintiff here merely alleges that "when Chang left his position as a senior executive at DirecTV to join the Starz Board, he was literally switching sides," FAC ¶ 24(a), that plaintiff "reasonably believed that Chang's position at DirecTV gave Chang *access* to DirecTV's confidential information," FAC ¶ 24(b) (emphasis added), that Chang "*could* improperly share such confidential information at any time," FAC ¶ 24(d) (emphasis added), that "Chang *might* do so," FAC ¶ 24(e) (emphasis added), and that others agreed with plaintiff "that there *might be a risk* of Chang making unlawful use of such information," FAC ¶ 24(f) (emphasis added). Such generalized concerns and assertions that an individual "could" misappropriate trade secrets after changing jobs cannot give rise to a reasonable suspicion of an UTSA violation.

In his opposition to the instant motion, plaintiff appears to suggest that in addition to "disclosing" the well-known fact that Chang left DirecTV and joined Starz, plaintiff also revealed "Chang's plans to seek out clients to hire him as a consultant on topics directly related to the confidential information he had obtained from DirecTV and Starz." Opp'n at 13 (citing FAC ¶ 24(d)). It is true, as plaintiff notes, that "[n]othing in the FAC indicates that Thornton had prior knowledge of this fact." Opp'n at 13. Crucially, however, the FAC *does not actually allege plaintiff revealed* these facts to anyone—rather, the pleadings only allege that plaintiff "*understood*" this fact to be true, and therefore "*reasonably believed* that Chang had an opportunity and strong motivation to make improper use of DirecTV's and Starz's confidential information and, moreover, could improperly share such confidential information at any time." <u>See</u> FAC ¶ 24(d) (emphasis added). Absent actual disclosure by plaintiff to Thornton or others regarding information about Chang's plans, plaintiff's undisclosed suspicions are insufficient to state a retaliation claim under section 1102.5(b).

Accordingly, to the extent plaintiff's section 1102.5(b) claim is premised upon his comments regarding Derek Chang, this claim is properly dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

### b.   Allegations regarding Gregory Maffei

Plaintiff also attempts to assert a section 1102.5(b) claim based upon comments that he shared with defendant Thornton regarding Thornton's purported conspiring with non-party Gregory Maffei, who is a member of the board of directors of Starz, Charter Communications, and other companies.  FAC ¶ 12(a).  Plaintiff avers that on April 28, 2014, during a dinner attended by plaintiff and two other Starz Senior Vice Presidents, defendant Thornton "bragged about ***how he and Mr. Maffei*** successfully and illegally manipulated a pending merger [between Comcast and Time Warner Cable] for Starz's financial gain."  FAC ¶ 26 (emphasis added).  According to plaintiff, "Comcast's affiliate carriage contract with Starz was set to expire unless Comcast accepted an extension of its current contract, which contained some very unfavorable terms for Comcast," such that Starz executives expected Comcast not to accept an extension.  Id. ¶ 27.

Ultimately, an extension was reached, and during the April 28, 2014 dinner, defendant Thornton "bragged" about how the extension came to be:

> [Mr. Thornton] provided explicit details as to ***how he and Mr. Maffei***, who is on the Boards of both Starz and Charter, ***conspired*** to manipulate [a potential deal between Charter and Comcast related to the Comcast-Time Warner Cable merger].  Mr. Thornton boasted that ***he had urged*** Mr. Maffei to call Comcast and demand that, as a clandestine part of the Charter/Comcast deal, Comcast extend its Starz affiliate carriage deal at a loss for Comcast and at a great profit for Starz.  Because Starz was not privy to the Charter/Comcast deal, the only way that Starz could profit from that deal was through Mr. Maffei's impermissible and duplicitous actions.

Id. ¶ 32 (emphasis added).

Plaintiff alleges that he "reasonably believed that Maffei's manipulation of the Charter/Comcast deal for the benefit of Starz" breached his fiduciary duty to Charter and thus violated California Corporations Code § 309(a).  Id. ¶ 32.  Accordingly, plaintiff approached Thornton after the dinner and "raised concerns about the legality of Comcast's deal with Starz, stating that the deal had resulted only because Maffei had traded on insider information he had obtained from his positions on the Boards of Charter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

and Starz and had improperly injected Starz into the negotiations between Comcast and Charter." Id. ¶ 34. In response, Thornton is alleged to have "sternly warned [plaintiff] to never repeat what he just said because it could cost [plaintiff] his job." Id.

Defendants contend that plaintiff did not "disclose" any information regarding these facts because "the only person with whom he discussed them was his supervisor, Thornton, whom [plaintiff] alleges was involved in the conspiracy and whom Thomas alleges told *him* about it in the first place." Motion at 10. As the California Court of Appeal explained in Mize-Kurzman, "[an] employee's report to the employee's supervisor about the supervisor's own wrongdoing is not a 'disclosure' and is not protected whistleblowing activity, because the employer already knows about his or her wrongdoing." Mize-Kurzman, 202 Cal. App. 4th at 859. "[C]riticism delivered directly to the wrongdoers does not further the purpose of . . . the California whistleblower laws to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it." Id. (noting that in those "California cases holding that a public employee's report of wrongdoing to his or her *own* employer is not excluded from qualifying as a disclosure protected under the Labor Code, the superior to whom the report is made *is not the person involved in the alleged wrongdoing*.") (second emphasis added).

Plaintiff argues, however, that Mize-Kurzman is "inapposite because the wrongdoing alleged here was Maffei's, not Thornton's." Opp'n at 16. However, as defendants note, any such assertion appears to be inconsistent with the allegations in the FAC, which repeatedly allege joint conduct and wrongdoing between Thornton and Maffei. See FAC ¶ 26 (noting "Thornton bragged about how *he and Mr. Maffei* successfully and illegally manipulated a pending merger for Starz's financial gain"); ¶ 31 (noting Thornton "provided explicit details as to *how he and Mr. Maffei . . . conspired to manipulate the Charter/Comcast deal . . .* [and how] *he had urged* Mr. Maffei to call Comcast and demand that . . . Comcast extend its Starz affiliate carriage deal at a loss for Comcast . . . ."). Again, plaintiff's expression of concerns, which appear only to have been made to Thornton himself (even if focused on the violations of alleged co-conspirator Maffei), constitutes "criticism delivered directly to the wrongdoer[]" that "does not further the purpose of either the federal [Whistleblower Protection Act] or the California whistleblower laws to encourage disclosure of wrongdoing to wrongdoing to persons who may be in a position to act to remedy it." Mize-Kurzman, 202 Cal. 4th at 859; cf. Wenjiu Liu v. Bd. of Trustees of Cal. State Univ., No. A142220, 2015 WL 3995049, at *3 (Cal. Ct. App. July 1, 2015) ("declin[ing] appellant's invitation to create

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

'new laws' contrary to <u>Mize-Kurzman</u> and holding that "protected disclosures . . . exclude . . . reports of wrongdoing made to the alleged wrongdoer").[3]

Accordingly, to the extent plaintiff's section 1102.5(b) claim is premised upon his comments regarding Gregory Maffei, this claim is properly dismissed.[4]

## 2.    Claim Two for Violation of California Labor Code § 1102.5(c)

Section 1102.5(c) prohibits retaliation against an employee "*for refusing to participate in* an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(c) (emphasis added). Here, plaintiff alleges that shortly after the deal between DirecTV and Starz closed in 2014, plaintiff refused to follow a directive that, in plaintiff's view, "would have violated numerous state and federal statutes prohibiting the knowing falsification of a corporation's documents," including California Corporations Code § 2254; California Corporations Code § 2255(b); California Corporations Code § 1507; and Section 13(b)(5) of the Securities Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1. FAC ¶ 53.

In support of his claim, plaintiff alleges the following facts in paragraph 51 of the operative complaint:

---

[3]  "The Court may cite unpublished California appellate decisions as persuasive authority." <u>Washington v. California City Correction Ctr.</u>, 871 F. Supp. 2d 1010, 1028 (E.D. Cal. 2012) (Ishii, C.J.) (citing <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.")).

[4]  Having dismissed plaintiff's claim for the reasons discussed *supra*, the Court need not consider defendants' additional argument that Maffei's alleged breach of his fiduciary duty to (Delaware corporation) Charter Communication cannot, as a matter of law, sustain a claim under section 1102.5(b) because breach of any such *common law duties* does not constitute a violation of a state or federal "*statute*" or a local, state, or federal "*rule or regulation*," as required by section 1102.5(b). <u>See</u> Cal. Cal. Code § 1102.5(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

On September 4, 2014, Kara Tefft, Starz's Director of Finance, scheduled a meeting with [plaintiff] and his staff. She explained that Mr. Thornton and Mr. Albrecht did not want to present unfavorable revenue figures to Starz's Board of Directors. Tefft showed [plaintiff] a cash flow and budget impact analysis of the recently executed DirecTV extension that provided the projected negative impact on Starz's revenue and subscriber figures for fourth quarter 2014 and continuing through fiscal year 2015. At Thornton's direction, Tefft instructed [plaintiff] and his staff that they were to arbitrarily inflate the revenue figures and subscriber numbers in this document. Tefft directed [plaintiff] to show her which revenue and subscriber figures to artificially inflate and how to provide plausible sounding explanations justifying those fabricated increases. She explained that this was necessary because Thornton and Albrecht were concerned that the "optics did not look good" to them and they wanted to present a false picture of favorable financial projections resulting from the DirecTV extension to the Starz Board, while maintaining plausible deniability in the event that the Board ever realized the revenue and subscriber figures had been fabricated. [Plaintiff] reasonably understood that the information Tefft was directing him to falsify would later be input into Starz's revenue and subscriber budgets, approved by Albrecht, approved by the Board, and then publicized to the financial markets through public disclosures including SEC filings. ***In sum, [plaintiff] understood that he was being ordered to materially falsify Starz's financial and operational performance and that this false information would ultimately be presented to the company's investors in order to give Starz's shares a greater value than they really possessed***.

FAC ¶ 51 (emphasis added). Because plaintiff "[r]ightfully believ[ed] Tefft's order to be unlawful, [plaintiff] adamantly refused to falsify the revenue and subscriber numbers and refused to manipulate the figures in order to justify any falsified numbers." Id. ¶ 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

The parties' respective briefing focuses primarily on whether or not the conduct in which plaintiff refused to participate would have resulted in a violation of California Corporations Code sections 2255(b) or 2254.[5]

California Corporations Code § 2255(b) prohibits and director, officer, and agent

> of any corporation, domestic or foreign, who, with intent to defraud, destroys, alters, mutilates or falsifies any of the books, papers, writings or securities belonging to the corporation or makes or concurs in omitting to make any material entry in any book of accounts or other record or document kept by the corporation[.]

Cal. Corp. Code § 2255(b). In plaintiff's view, he "clearly states a violation of § 2255(b) by alleging that Tefft ordered him to (1) falsify the revenue and subscriber figures (2) in Starz's cash flow and budget impact analysis (3) for the express purpose of hiding Starz's disappointing financial and operating performance from its Board and investors." Opp'n at 7 (citing FAC ¶ 51).

Similarly, California Corporations Code § 2254 prohibits directors, officers, and agents "of any corporation, domestic or foreign" from knowingly concurring in

> making, publishing or posting . . . (1) any written report, exhibit, statement of its affairs or pecuniary condition or notice containing any material statement which is false, or (2) any untrue or willfully or fraudulently exaggerated report, prospectus, account, statement of operations, values, business, profits, expenditures or prospects, or (3)

---

[5] At oral argument on the instant motion, plaintiff clarified that although his opposition focused primarily upon California Corporations Code sections 2255(b) and 2254, plaintiff's claim under California Labor Code section 1102.5(c) is nonetheless predicated upon his refusal to participate in conduct that, in plaintiff's view, would have violated California Corporations Code section 1507, as well as section 13(b)(5) of the Securities Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1. See FAC ¶ 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

any other paper or document intended to produce or give, or having a
tendency to produce or give, the shares of stock in such corporation a
greater value or a less apparent or market value than they really
possess[.]

Cal. Corp. Code § 2254. Again, plaintiff avers that section 2254 "is satisfied by
allegations that an agent (1) knowingly (2) concurred in making (3) any untrue document
(4) intended to produce, or having a tendency to produce, an inflated value to the
corporation's shares. Mr. Thomas satisfies every element of this statute." Opp'n at 7
(emphasis ad

        In their motion, defendants closely parse the allegations in paragraph 51 of the
FAC and argue that plaintiff's claim fails because, *inter alia*, plaintiff has failed
sufficiently to plead with particularity those facts on which his claim is based, as required
by Federal Rule of Civil Procedure 9(b). Under Federal Rule of Civil Procedure 9(b), the
circumstances constituting a claim for fraud must be pled with particularity. Fed. R. Civ.
P. §9(b). As is relevant here, the Ninth Circuit "has repeatedly recognized, implicitly or
explicitly, that Rule 9(b) applies to actions brought under the federal securities laws." In
re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc), superseded by
statute on other grounds as stated in SEC v. Todd, 642 F.3d 1207, 1216 (9th Cir. 2011)
(citations omitted); see also Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990
(9th Cir. 2009) ("This requirement has long been applied to securities fraud
complaints."). The same is true with respect to state-law claims. See Vess, 317 F.3d at
1103 ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity
requirement applies to state-law causes of action.").

        A pleading meets Rule 9(b)'s heightened pleading requirements when a false
statement is alleged and "circumstances indicating falseness" are set forth. In re
GlenFed, 42 F.3d at 1548. Because Rule 9(b) requires that a pleading "[identify the]
circumstances constituting fraud so that the defendant can prepare an adequate answer
from the allegations," the plaintiff must "identify the 'who, what, when, where and how
of the misconduct charged,' as well as 'what is false or misleading about [the purportedly
fraudulent] statement, and why it is false.'" Walling v. Beverly Enters., 476 F.2d 393,
397 (9th Cir. 1973) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Here, defendants argue in their briefing and again at oral argument that plaintiff's section 1102.5(c) claim is not pled with sufficient particularity. In support of their argument, defendants cite to the Ninth Circuit's decision in In re Daou Sys., Inc., 411 F.3d 1006, 1014-1022 (9th Cir. 2005), wherein a class of former investors who purchased common stock alleged that defendant-executives fraudulently violated the Generally Accepted Accounting Principles in order to artificially inflate the price of the defendant-company's stock. Id. at 1012. The putative class in Daou asserted claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). See Daou, 411 F.3d at 1014 (noting "[i]t is well established that claims brought under Rule 10b-5 and section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)"). In this context, the court explained that "[a] securities fraud complaint must . . . 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.' " Id. at 1014 (quoting Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002)). Any such complaint brought under federal securities law "must also 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' " Id. (quoting Gompper, 298 F.3d at 895).

Plaintiff concedes that pursuant to Rule 9(b), the operative complaint must do more than merely identify a false statement and make a conclusory allegation that it was false; plaintiff "must set forth what is false or misleading about a statement, and why it is false." In re GlenFed, 42 F.3d at 1548. However, plaintiff relies upon the Ninth Circuit's decision in GlenFed, wherein the court noted that in "complicated" scenarios in which a statement appears untrue only in hindsight, "it is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood." Id. Rather, plaintiff must allege facts supporting "an explanation as to why the disputed statement was untrue or misleading *when made*." Id. at 1548-49 (emphasis in original). The court in GlenFed contrasted this scenario with more straightforward situations in which "the requisite particularity might be supplied with great simplicity." Id. at 1548.

The Court finds, as plaintiff contends, that the allegations of fraud in the instant case are relatively straightforward, such that the requisite particularity may be supplied with relative "simplicity." Id. at 1548; see FAC ¶ 51. Furthermore, the Court notes that unlike in Daou, plaintiff's claim here is not brought under federal securities law for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|----------|-------------------------|------|---------------|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

violation of any such statutes, but rather under the California Labor Code for alleged *refusal to participate in* conduct that would result in violation of a state or federal statute, or a local, state, or federal rule or regulation. See Cal. Lab. Code § 1102.5(c). In this context, the Court agrees with plaintiff's assertion that he "adequately alleges the time (September 4, 2014), place (Starz's offices where Mr. Thomas worked), the content of the fraudulent representation (artificially inflated revenue figures and subscriber numbers in a cash flow and budget impact analysis), and the identity of the person engaged in the fraud (Tefft, Thornton, Albrecht, and—they hoped—[plaintiff Keno Thomas])." Opp'n at 9 (citing FAC ¶ 51).

Ultimately, because the Court cannot agree with defendants' contention that plaintiff fails to "plead with particularity *[even] a reasonable belief* that any securities law was violated," Reply at 15 (emphasis added), the Court finds that plaintiff has sufficiently pled his claim under California Labor Code section 1102.5(c), and that defendants' motion must accordingly be denied as to this claim.

**B.      Claim Seven for Intentional Infliction of Emotional Distress**

Plaintiff's seventh claim is for intentional infliction of emotional distress. Following a lengthy discussion, the Court dismissed this claim from plaintiff's original complaint on the grounds that it is preempted by the California Worker's Compensation Act. See Thomas v. Starz Entm't LLC, 2016 WL 844799, at *7-*11 (C.D. Cal. Feb. 29, 2016) (discussing merits of plaintiff's claim for intentional infliction of emotional distress). Specifically, "[t]he California Supreme Court has expressly held that 'whistle blower retaliation,' of the sort alleged here, is a risk inherent in the employment relationship and is, therefore, preempted under the Worker's Compensation Act." Id. at *10 (citing Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 902-903 (2008)).

Plaintiff previously argued against this conclusion, primarily on the grounds that, in his view, his emotional distress claim is premised upon conduct that amounts to discrimination, exceeds the risks inherent in the employment relationship, and therefore is not preempted. However, as the Court explained in its prior order,

> where an employer's alleged misconduct forms a normal part of the
> employment relationship, such as demotions, criticism, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

negotiations of grievances, an employee who suffers emotional distress cannot avoid Worker's Compensation Act preemption by simply "characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." [Cole v. Fair Oaks Fire Protection District, 43 Cal.3d 148, 160 (1987).] Rather, California courts have instructed that, "[a]s a guiding principle, the court must consider only the acts themselves and not the motives behind the acts." Cifuentes v. Costco Wholesale Corp., No. B231684, 2012 WL 2814395, at *9 (Cal. App. Jul. 10, 2012) (Unpub. Disp.). Accordingly, "the critical issue" in worker's compensation preemption, "is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship" Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800, 812 (2001). The conduct plaintiff has alleged in this case is the type of conduct courts have found falls within the normal "risks inherent in the employment relationship."

Thomas, 2016 WL 844799, at *8.

      Plaintiff here has not provided grounds for the Court to alter its conclusion as to plaintiff's IIED claim. Perhaps more importantly, as the Court explained in its prior order, "even if it were true that[, as a matter of law,] claims for intentional infliction of emotional distress that are predicated on discrimination are not preempted by the Worker's Compensation Act, *it is not clear that plaintiff's claim for emotional distress is, in fact, based on discrimination*." Id. at *9 (emphasis added). Although plaintiff argued in opposition to defendants' prior motion to dismiss that his claim for intentional infliction of emotional distress is based "not on the facts underlying his whistleblower claims, but rather on the facts underlying his discrimination claims," Dkt. 42, at 20-21, plaintiff does not actually assert any discrimination claims in the operative complaint.[6]

---

      [6] Indeed, as the Court noted in its prior order, plaintiff's previously-filed papers "admit[] that his claims do not arise out of discrimination he may have suffered personally, but rather out of retaliation for reporting on the conduct of others." Thomas, 2016 WL 844799 at *9 (citing Opp. to Mot. to Strike, at 9 ("[Plaintiff] does not allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
| --- | --- | --- | --- |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Rather, plaintiff's FAC asserts seven claims for relief—one claim for intentional infliction of emotional distress and six claims relating to retaliation.  In each of the retaliation claims, plaintiff asserts that he disclosed, called into question, or otherwise challenged conduct by Starz's employees which he believed was unlawful or unethical and that defendants retaliated against him for reporting this conduct.

Accordingly, for the foregoing reasons, the Court finds that plaintiff's claim for intentional infliction of emotional distress is preempted by the Worker's Compensation Act and, in any event, premised upon defendants' retaliatory conduct and not upon unlawful discrimination.  Plaintiff's IIED claim is accordingly dismissed with prejudice.

## V.     CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss plaintiff's FAC pursuant to Federal rule of Civil Procedure 12(b)(6).

Specifically, the Court (1) **GRANTS WITHOUT PREJUDICE** defendant's motion to dismiss claim one for violation of California Labor Code § 1102.5(b); (2) **DENIES** defendant's motion to dismiss claim one for violation of California Labor Code § 1102.5(c); and **GRANTS WITH PREJUDICE** defendant's motion to dismiss claim seven for intentional infliction of emotional distress.

---

that he was fired because he is a minority, but rather because, inter alia, he complained about discrimination towards other individuals who are women and/or minorities."); Id. at 12 ("As noted, [plaintiff] is not suing Starz for discriminating against its employees; rather, he is suing Starz for, inter alia, unlawfully retaliating against him for complaining about discrimination.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | July 11, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Plaintiff may file an amended complaint addressing the deficiencies identified herein within **twenty-one (21) days** of the date of this order.  Failure to do so may result in dismissal of plaintiff's first claim with prejudice.

IT IS SO ORDERED.

| | 00 | : | 12 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |