UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Brian Olney | Eric Amdursky |
| | Margaret Carter |

**Proceedings:** DEFENDANT STARZ'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Dkt. 73, filed August 1, 2016)

## I.   INTRODUCTION AND PROCEDURAL HISTORY

On October 29, 2015, plaintiff Keno V. Thomas ("plaintiff") filed this action in the Los Angeles County Superior Court against defendants Starz Entertainment, LLC ("Starz"); Michael Thornton; Liberty Media Corp.; Starz; Starz, LLC; Chris Albrecht, and Does 1-20 (collectively, "defendants").[1]  Dkt. 1, Ex. A ("Compl.").  On November 30, 2015, defendants removed this action to this Court on the basis of federal question and diversity jurisdiction.  Dkt. 1.

In brief, plaintiff, who is a former executive of the television network Starz, alleges that defendants retaliated against and ultimately fired him in violation of state and federal law.  Specifically, plaintiff's original complaint asserted claims for (1) retaliation in violation of California Labor Code § 1102.5(b); (2) retaliation in violation of California Labor Code § 1102.5(c); (3) retaliation in violation of California Government Code § 12940(h); (4) retaliation in violation of 42 U.S.C. § 1981; (5) wrongful termination in

---

[1] On February 5, 2016, plaintiff voluntarily dismissed defendants Liberty Media Corp., Starz, and Starz LLC. from this action.  Dkt. 42.  On March 1, 2016, based upon a stipulation filed by the parties pursuant to Federal Rule of Civil Procedure 41(a)(1), the Court dismissed defendant Albrecht from the action without prejudice.  Dkt. 55.  On August 9, 2016, the Court dismissed Doe defendants 11-20 inclusive, pursuant to Local Rule 19-1 which limits the number of Doe defendants to 10.  Dkt. 75.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

violation of public policy; (6) failure to prevent retaliation in violation of California Government Code § 12940 et seq.; and (7) intentional infliction of emotional distress. See generally Compl.

    On December 7, 2015, defendants filed a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss (i) plaintiff's first and second claims for retaliation in violation of the California Labor Code; (ii) plaintiff's fourth claim for retaliation in violation of 42 U.S.C. § 1981, and (iii) plaintiff's seventh claim for intentional infliction of emotional distress. Dkt. 21. In an order dated February 29, 2016, the Court denied defendant's motion to dismiss plaintiff's fourth claim for retaliation in violation of 42 U.S.C. § 1981, dismissed without prejudice plaintiff's first and second claims for retaliation in violation of Labor Code § 1102.5(b) and (c), and similarly dismissed without prejudice plaintiff's seventh claim for intentional infliction of emotional distress.[2] Dkt. 54 ("Order 1").

    On March 30, 2016, plaintiff filed the first amended complaint. Dkt. 58 ("FAC"). On April 13, 2016, defendants filed a motion to dismiss the first, second, and seventh claims in the FAC. Dkt. 63. On July 11, 2016, the Court denied defendants' motion to dismiss the second claim for retaliation in violation of California Labor Code § 1102.5(c), dismissed without prejudice plaintiff's first claim for retaliation in violation of California Labor Code § 1102.5(b), and dismissed with prejudice plaintiff's seventh claim for intentional infliction of emotional distress. Dkt. 72 ("Order 2").

    On August 1, 2016, plaintiff filed the operative second amended complaint. Dkt. 73 ("SAC"). On August 28, 2016, defendant Starz filed the instant motion to dismiss plaintiff's first claim of retaliation in violation of California Labor Code § 1102.5(b).[3]

---

    [2] In its February 29, 2016 order, the Court also dismissed defendant Albrecht from this action without prejudice, and further granted in part and denied in part defendants' Rule 12(f) motion to strike portions of the complaint. Dkt. 54.

    [3] Starz also filed a request for judicial notice of the certificate of incorporation for Charter Communications in support of Starz's motion to dismiss. See Dkt. 77, Ex. A. The Court grants defendant's request for judicial notice because this document is in the public record and its existence is "capable of accurate and ready determination by resort

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Dkt. 76 ("Mot."). On September 2, 2016, plaintiff filed his opposition. Dkt. 78 ("Opp'n"). On September 12, 2016, Starz filed its reply. Dkt. 79 ("Reply").

Having carefully considered the parties' arguments, the Court concludes as follows.

## II. BACKGROUND

In 2004, plaintiff was hired by Starz as its senior vice president of sales and affiliate marketing. SAC ¶ 14. In this role, plaintiff held management responsibility for Starz's accounts with several of its distributors, including DirecTV, Dish Network, Verizon FiOS, and AT&T U-verse. Id. ¶ 15. On August 16, 2013, Thornton was named Starz's chief revenue officer and became plaintiff's direct supervisor. Id. ¶ 18.

In 2013 and 2014, plaintiff raised concerns to the management of Starz regarding two practices that he believed were unlawful.

### A. Alleged Violation by Derek Chang

First, in January 2013, Starz announced the appointment of Derek Chang, a former executive vice president at DirecTV, to its board of directors. Id. ¶ 24. As detailed more fully infra, plaintiff relayed to Starz management, including plaintiff's supervisor Michael Thornton, that he believed Chang could use confidential information he had obtained from DirecTV, such as DirecTV's proprietary information concerning its pricing and licensing fees, for his own benefit. Id. ¶¶ 24(c)-(e). Plaintiff states that the management personnel to whom he raised these concerns agreed with plaintiff that there may be a risk of Chang improperly using DirecTV's confidential information for his own benefit. Id. ¶ 25. However, when plaintiff raised the issue again a few months later, Thornton threatened to fire plaintiff if plaintiff ever spoke about the matter again. Id. ¶ 26.

---

to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

**B.     Alleged Violation by Gregory Maffei**

  Second, plaintiff alleges that he disclosed to multiple persons that he believed Starz had obtained a favorable deal with one of its major distributors, Comcast, as a result of illegal insider manipulation and unfair influence on a pending merger. Id. ¶¶ 38-42. Specifically, plaintiff alleges that, in early 2014, "Comcast's affiliate carriage contract with Starz was set to expire" and that "it was . . . anticipated among Starz'[s] executives that Comcast would . . . seek to negotiate a new affiliate carriage contract." Id. ¶ 29. Plaintiff further alleges that, at the same time, Comcast and Time Warner Cable, another distribution company, were attempting to obtain federal approval for a merger of their two companies. Id. ¶ 30. Plaintiff contends that "the FCC and Department of Justice were scrutinizing the proposed Comcast and Time Warner Cable merger," and that, "[i]n an effort to obtain governmental approval for the merger," Comcast and Time Warner Cable proposed to sell millions of subscribers to a third distribution company, Charter Communications ("Charter"). Id.

  Plaintiff alleges that a member of the Starz board of directors, non-party Gregory Maffei, who is also on the Charter board of directors engaged in unlawful conduct. Id. ¶¶ 33-34. Specifically, plaintiff alleges that Thornton "provided explicit details" as to how Thornton and Maffei "conspired to manipulate the Charter/Comcast deal" and "boasted [to plaintiff] that he had urged Mr. Maffei to call Comcast and demand that, as a clandestine part of the Charter/Comcast deal, Comcast extend its Starz affiliate carriage deal at a loss for Comcast and at a great profit for Starz." Id. ¶33. Plaintiff avers, upon information and belief, that Maffei was in Los Angeles, California, the weekend of April 26-27, 2014 and that the Comcast extension was secured also during that weekend. Id. ¶ 35. Plaintiff states that the Charter/Comcast deal was announced at a dinner the following Monday, April 28, 2016, where Starz senior vice president Randy McCurdy was in attendance. Id. ¶¶ 28, 31. Plaintiff avers that he understood that the Charter/Comcast deal was secured the weekend of April 26-27, 2014, because, at the April 28, 2014 dinner, Thornton told plaintiff "we got the extension done over the weekend." Id. ¶ 33.

  Plaintiff states that when he learned about Thornton and Maffei's actions from Thornton, he became concerned that Maffei breached his fiduciary duty to Charter and thus violated California Corporations Code § 309(a) and California's Unfair Competition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Law ("UCL"), California Business & Professions Code §§ 17200 et seq. Id. ¶ 34. However, when plaintiff "approached Thornton and raised concerns about the legality of Comcast's deal with Starz," Thornton "sternly warned [plaintiff] to never repeat what he just said because it could cost [plaintiff] his job." Id. ¶ 37.

Plaintiff states that shortly after plaintiff's conversation with Thornton, plaintiff called Ed Huguez, who was plaintiff's former supervisor at Starz, but no longer worked for Starz at the time of the call. Id. ¶ 38. Plaintiff contends that he told Huguez about Maffei and Thornton's conduct. Id. Plaintiff avers that he also discussed Maffei and Thornton's actions with three of his direct reports: Jennifer Schouten, the vice president of affiliate marketing; Tom Gove, the vice president of affiliate sales; and Tom Wenzel, the senior director of affiliate sales. Id. ¶ 39. Plaintiff alleges that there is a "high likelihood" that Wenzel relayed plaintiff's comments to Thornton because Gove and Schouten had warned plaintiff that Wenzel had been meeting privately with Thornton and plaintiff had personally observed several such meetings. Id. Plaintiff also alleges that around June and July 2014, plaintiff questioned the legality of the Comcast extension to McCurdy and that McCurdy very likely relayed plaintiff's comments to Thornton, to whom McCurdy was "highly loyal". Id. ¶ 40.

Plaintiff avers that on or around August 3, 2014, plaintiff called Richard Waysdorf, in-house counsel for Starz and senior vice president in the legal department. Id. ¶ 41. Plaintiff contends that he raised the issue of the illegality of the Comcast extension and Maffei's conduct during this phone conversation with Waysdorf. Id. Plaintiff states that he "understood that Waysdorf had concerns about the legality of Maffei's involvement in the Comcast extension and about the use of similarly questionable tactics in Starz' negotiation with DirecTV." Id. Plaintiff avers that it was therefore "highly likely" that Waysdorf relayed plaintiff's conversation to Thornton. Id.

Plaintiff alleges that on or around August 22, 2014, plaintiff attended a meeting regarding the status of the DirecTV negotiations, that included chief financial officer Scott MacDonald, legal department employee Todd Hoy, Starz general counsel David Weil, and Starz president Glenn Curtis, and Thornton. Id. ¶ 42. Plaintiff alleges that he "found Weil, Curtis, and Thornton huddled together and talking in a whisper." Id. Plaintiff "understood" from overhearing their conversation that "similar to Maffei's actions to secure the Comcast extension, Maffei had called AT&T and threatened to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

lobby against its pending acquisition of DirecTV if the DirecTV contract with Starz was not extended on terms favorable to Starz." Id. Plaintiff states that he told Weil, Curtis, and Thornton "that it sounded as though Starz was employing the same tactics it utilized in the Comcast deal." Id.

### C. Plaintiff's Allegations against Starz

Finally, plaintiff alleges, on information and belief, that as a result of plaintiff's "well-known" concerns about the legality of the Comcast extension and his "willingness" to speak with multiple current and former senior-level employees, Starz believed that plaintiff had disclosed or might disclose the information about Maffei's alleged unlawful conduct to a government or law enforcement agency, to a person with authority over plaintiff or to another Starz employee with the authority to investigate, discover, or correct the violation. Id. ¶¶ 43-44.

### D. Alleged Retaliation against Plaintiff

In the fall of 2013, Starz and DirecTV entered into negotiations because their existing contract was set to expire on August 31, 2014. Id. ¶ 45. Plaintiff alleges that Thornton repeatedly threatened to fire plaintiff, who was largely responsible for the DirecTV negotiations, if the deal was not completed by August 31, 2014. Id. By February 2014, Starz and DirecTV had not concluded their negotiations and DirecTV began removing Starz from its marketing packages. Id. ¶ 46. Plaintiff alleges that by mid-2014, Thornton and other Starz executives began excluding plaintiff from meetings and emails regarding the DirecTV negotiations. Id. ¶ 49. Plaintiff states that negotiations between Starz and DirecTV intensified in the Summer of 2014. Id. ¶ 51. Plaintiff avers that he was left out of key meetings and emails, and that Thornton negotiated directly with DirecTV on behalf of Starz. Id. ¶¶ 52-53. By mid-August 2014, plaintiff alleges he had been so excluded from the DirecTV negotiations that Thornton refused even to tell plaintiff about Starz's negotiations strategy with DirecTV. Id. ¶¶ 56-57.

Ultimately, on August 22, 2014, Starz and DirecTV executed an agreement extending their contract. Id. ¶ 59. The following month, during a meeting on September 4, 2014, Thornton allegedly directed Kara Tefft, Starz's director of finance, to order Mr. Thomas to "arbitrarily inflate [certain] revenue figures and subscriber numbers" for a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

presentation to Starz's Board. Id. ¶ 61. Plaintiff states that he refused the order, believing that Tefft's directive "violated numerous state and federal statutes prohibiting the knowing falsification of a corporation's documents," including California Corporations Code § 1507; California Corporations Code § 2254; California Corporations Code § 2255(b); and Section 13(b)(5) of the Securities Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1. Id. ¶¶ 62-63.[4]

Plaintiff further states that beginning in the Summer of 2014, he "began experiencing significant emotional distress and health deterioration, in large part due to . . . Starz'[s] deplorable treatment of him." Id. ¶ 68. During the week of September 8, 2014, plaintiff states that his health "reached a breaking point" forcing him to miss work. Id. Shortly thereafter, plaintiff took a three-week medical leave of absence for alleged depression and anxiety. Id. ¶ 59. When plaintiff returned from his medical leave in October 2014, Starz terminated his employment. Id. ¶ 70.

## III. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

---

[4] Plaintiff alleges this conduct as the basis for his claim of retaliation for refusing to participate in illegal activity pursuant to section 1102.5(c). SAC ¶¶ 80-84. The Court denied defendants' previous motion to dismiss plaintiff's section 1102.5(c) claim. Order 2 at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

**B.     California Labor Code Section 1102.5(b)**

California Labor Code section 1102.5(b) prohibits retaliation against an employee for *disclosing information* regarding "a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation . . . if the employee has *reasonable cause* to believe that the information *discloses a violation* . . . ." Cal. Lab. Code § 1102.5(b) (emphasis added).

"To establish a prima facie case for retaliation under section 1102.5, an employee must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004). As is relevant here, a protected activity includes "the disclosure of or opposition to a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." La v. San Mateo Cnty Transit Dist., 2014 WL 4632224, at *4 (N.D. Cal. Sep. 16, 2014) (citing Edgerly v. City of Oakland, 211 Cal. App. 4th 1191, 1199 (2012).

**IV.     DISCUSSION**

Plaintiff alleges that he was terminated in violation of section 1102.5(b) for the following three reasons.

First, plaintiff made statements regarding the potentially illegal conduct of Starz board member Derek Chang to Richard Waysdorf, among others. Plaintiff alleges that he reasonably believed that there was an imminent danger that Chang's conduct would breach his fiduciary duty to Starz and thereby violate California Corporations Code §309(a); California Uniform Trade Secrets Act ("UTSA"), California Civil Code §§ 3426 et seq.; and the UCL, California Business and Professional Code §§ 17200 et seq.

Second, plaintiff made statements regarding the alleged illegal conduct of Starz board member Gregory Maffei to Richard Waysdorf, among others. Plaintiff alleges that he reasonably believed that Maffei's conduct breached his fiduciary duty to Charter and violated California Corporations Code §309(a) and the UCL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Third, Starz *believed* that plaintiff disclosed or may disclose information about Maffei's alleged illegal conduct to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has the authority to investigate, discover, or correct the violation.

### A. Retaliation Arising from Disclosures Regarding David Chang

#### 1. Allegations in the FAC

The Court previously dismissed without prejudice plaintiff's section 1102.5(b) claim because, with respect to plaintiff's allegations regarding Chang, "plaintiff d[id] not appear to have 'disclosed,' flagged, or complained of anything that was not publically known and fully understood by those with whom he discussed his concerns." Order 2 at 8.

In the FAC, plaintiff alleged that he reported to his direct supervisors, Huguez and Thornton, his "concern" that "Starz Director [Derek Chang] had confidential information that would likely be unlawfully disclosed and/or used" in violation of the UTSA and the UCL. See FAC ¶¶ 65-66. Plaintiff averred that "Chang's appointment to the Starz Board led [plaintiff] to reasonably believe that Chang *would engage* in the unlawful misuse of trade secrets." Id. ¶ 24 (emphasis added). According to the FAC, the "[n]ews that Chang had switched sides in the midst of DirecTV's negotiations with Starz provoked *widespread consternation at both companies*," such that "[n]umerous executives at DirecTV expressed concern over Chang's move, *as did senior executives at Starz* including . . . Thornton, and Ed Huguez, who was Mr. Thomas's direct supervisor at the time." Id. ¶ 24(c) (emphasis added). After learning of Chang's appointment to the Board, plaintiff "explained to Huguez and Thornton that he believed Chang would use his knowledge of DirecTV's and Starz's pricing, licensing fees, and other confidential information for his personal benefit." Id. ¶ 24(f). Indeed, "Mr. Huguez shared [plaintiff's] specific concerns that Chang might improperly utilize and disclose confidential information, and expressed these concerns to Glenn Curtis, Starz's president." Id. ¶ 24(c). Plaintiff alleged that "Chang had an opportunity and strong motivation to make improper use of DirecTV's and Starz's confidential information" and that plaintiff believed that Chang "might do [such wrongdoing]" on account of his previous position at DirecTV. Id. ¶ 24(d)-(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

      The Court concluded that plaintiff did not sufficiently plead a disclosure of a UTSA violation in his FAC.[5] Order 2 at 9. In so doing, the Court found that while "disclosure" was not specifically defined in section 1102.5, the California Court of Appeal for the Fourth District has construed this statute and "read the term 'disclosure' consistent with its 'ordinarily understood meaning.'" Id. at 8. Accordingly, the Court adopted a definition of "disclosure" from Mize-Kurzman v. Marin Cmty. Coll. Dist., 202 Cal. App. 4th 832, 858 (2012), and found that it meant "*to reveal something that was hidden and not known*." See Order 2 at 8. The Court noted that Mize-Kurzman agreed with other federal cases that have held that the report of information that was already known did not constitute a protected disclosure. Id. With this construction in mind, the Court held that plaintiff did not disclose anything to Huguez and Thornton because Chang's appointment to the Starz Board was publicly known and plaintiff's concern over Chang's move was already widely shared as evidenced by the "widespread consternation at both companies." Id. at 9.

      The Court did not find plaintiff's *explanation of his belief* that "Chang would use . . . confidential information for his personal benefit" to Huguez and Thornton to be a disclosure of a violation. See id. In so doing, the Court noted that a violation of the UTSA required an actual or threatened misappropriation. Id. As a matter of California law, a threat of misappropriation could not be inferred from the fact that Chang, upon voluntarily terminating his employment with DirecTV, immediately began working for a direct competitor and appeared to be performing for his new employer the same or similar job duties he performed while employed by DirecTV. Id. at 10. The Court noted

---

[5] California UTSA supersedes any claim "based on the same nucleus of facts as the misappropriation of trade secrets claim." K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009); see also Mattel, Inc. v. MGA Enterntainment, Inc., 782 F. Supp. 2d 911, 985 (C.D. Cal. 2011) (California Uniform Trade Secrets Act superseded toy company's claim alleging that competitor and company's employee engaged in unfair competition to the extent that claim was based upon misappropriation of company's confidential information). The Court did not address plaintiff's allegations that he disclosed that Chang also violated California Corporations Code §309(a) and the UCL, because those alleged violations arose from a common nucleus of facts and were thus preempted by Chang's alleged violation of the UTSA. As such, the Court's analysis is limited to violations pursuant to the UTSA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

that plaintiff here merely alleged that "when Chang left his position as a senior executive at DirecTV to join the Starz Board, he was literally switching sides," FAC ¶ 24(a), and that plaintiff "reasonably believed that Chang's position at DirecTV gave Chang *access* to DirecTV's confidential information," id. ¶ 24(b) (emphasis added), that Chang "*could* improperly share such confidential information at any time," FAC ¶ 24(d) (emphasis added), that "Chang *might* do so," id. ¶ 24(e) (emphasis added), and that others agreed with plaintiff "that there *might be a risk* of Chang making unlawful use of such information," id. ¶ 24(f) (emphasis added). Order 2 at 10. The Court concluded that such generalized concerns and assertions that an individual "could" misappropriate trade secrets after changing jobs cannot give rise to a reasonable suspicion of an UTSA violation. Id.

Accordingly, the Court dismissed plaintiff's section 1102.5(b) claim to the extent that it was premised upon his comments regarding Chang.

### 2. Allegations in the Operative SAC

In the operative complaint, plaintiff adds facts attempting to show that he disclosed a violation of law. In light of these amendments, the Court again considers whether plaintiff has plausibly stated his claims. The Court notes that in the SAC, allegations with respect to Chang are substantially the same as in the FAC with the exception of three sentences.

In the SAC, plaintiff alleges for the first time that in addition to violating the UTSA, Chang's conduct was a breach of fiduciary duty in violation of California Corporations Code § 309(a). SAC ¶ 27. As previously noted, because the UTSA preempts alternative civil remedies "based on the same nucleus of facts as the misappropriation of trade secrets claim," the relevant analysis is limited to violations of UTSA. See K.C. Multimedia, 171 Cal. App. 4th at 958; supra n.5, at 11.

Plaintiff again alleges in the SAC that he "explained to Huguez and Thornton that he believed Chang would use his knowledge of DirecTV's and Starz's pricing, licensing fees, and other confidential information for his personal benefit." SAC ¶ 25; FAC ¶ 24(f). In his SAC, plaintiff added: "[Plaintiff] explained that this was due to, among

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

other things, Chang's active pursuit of clients to advise on the very issues about which he had obtained confidential information from DirecTV and Starz." SAC ¶ 25.

As he did in the FAC, plaintiff also alleges in the SAC that "[plaintiff] repeated his concerns about Chang to Thornton, this time while the two were alone." SAC ¶ 26; FAC ¶ 24(f). In his SAC, plaintiff added: "Specifically, [plaintiff] again told Thornton about Chang's plans to develop a consulting business and woo clients with promises to advise them on the very topics for which Chang had acquired confidential information from DirecTV and Starz." SAC ¶ 26.

These two new sentences in plaintiff's SAC offer additional explanation for why plaintiff believed that Chang could violate the UTSA. However, plaintiff still does not *disclose* any of Chang's actual or imminent wrongdoings; plaintiff merely further explains the reasons why he believed that Chang might engage in such wrongdoings on account of his previous position at DirecTV. Plaintiff's allegations regarding Chang remain the same generalized concerns and assertions that an individual could misappropriate trade secrets after changing jobs. These, as this Court held in its July 11, 2016 order, cannot give rise to a reasonable suspicion of a UTSA violation.

Accordingly, plaintiff has not sufficiently pleaded that he disclosed a violation of law with respect to Chang's conduct. Therefore, plaintiff may not raise a section 1102.5(b) claim on the basis of his comments about Chang.

### B. Retaliation Arising from Disclosures Regarding Gregory Maffei

The Court previously dismissed without prejudice plaintiff's section 1102.5(b) claim with respect to plaintiff's allegations regarding Gregory Maffei because under California law, plaintiff's discussion with Thornton, who plaintiff alleges conspired with Maffei, was equivalent to reporting the wrongdoing to the alleged wrongdoer. Order 2 at 12-13. [6]

---

[6] Having dismissed plaintiff's claim for failure to plausibly plead disclosure, the Court did not consider whether plaintiff communicated information that disclosed "a violation of state or federal statute, or . . . a local, state, or federal rule or regulation" within the scope of section 1102.5(b). Order 2 at 13, n.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

In the operative complaint, plaintiff adds facts attempting to show that he disclosed a violation of law pursuant to section 1102.5(b). In light of these amendments, the Court again considers whether plaintiff has plausibly stated his claim.

### 1. Protected Activity

#### a. Disclosure to a "Person with Authority"

To be a protected activity pursuant to section 1102.5(b), an employee's disclosure must be to "a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation." Plaintiff alleges for the first time in his SAC that he made disclosures regarding Maffei to, *inter alios*[7], Richard Waysdorf, in-house counsel for Starz and a senior vice president in the legal department. SAC ¶ 41. Plaintiff avers that Waysdorf's responsibilities "included internal compliance" and that Waysdorf "had authority to investigate, discover, or correct violations or issues of noncompliance exposing Starz to potential legal liability." Id. Plaintiff alleges that during his call with Waysdorf, plaintiff "understood that Waysdorf had concerns about the legality of Maffei's involvement in the Comcast extension, and about the use of similarly questionable tactics in Starz' negotiations with DirecTV." Id. Reading the pleadings in the light most favorable to plaintiff, the Court finds that it is plausible that Waysdorf's concerns arose *in response to* plaintiff's communications, the content of which Waysdorf previously did not know. See Sprewell, 266 F.3d at 988. Therefore, the Court finds that plaintiff made a disclosure to a person with authority to investigate the violation, as required by section 1102.5(b).

Accordingly, the Court finds that plaintiff has now adequately alleged that he engaged in a protected activity.

---

[7] In his SAC, plaintiff alleges that he also made disclosures regarding Maffei to Ed Huguez, Tom Gove, Jennifer Schouten, Tom Wenzel, Randy McCurdy, David Weil, and Glenn Curtis. Having determined that Waysdorf is a "person with authority" pursuant to section 1102.5(b), the Court at this time need not determine whether any other person to whom plaintiff allegedly made disclosures was a "person with authority."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

b. **Disclosure of Violations within the Scope of Section 1102.5(b)**

To plead a retaliation claim pursuant to section 1102.5(b), the disclosing employee must have "reasonable cause" to believe that the information he communicates "discloses *a violation* of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b) (emphasis added). Plaintiff alleges that he reasonably believed that Maffei's alleged manipulation of the Charter/Comcast deal violated, *inter alia*, the UCL. SAC ¶ 34.

Plaintiff alleges that the UCL violation arose from Maffei's alleged breach of his common law fiduciary duty to Charter. Id. As a director of Charter, Maffei owed Charter a fiduciary duty of loyalty that required him to act in Charter's best interests in its negotiations with Comcast. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 345, 411 P.2d 921 (1996) ("Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests . . . [T]hey stand in a *fiduciary relation* to the corporation and its stockholders.") (emphasis added). Plaintiff alleges that Maffei had a fiduciary duty to Charter as its director and that he breached that duty because Maffei negotiated the Charter/Comcast deal in a manner that "subverted Charter's interests to the interests of Starz" and "unjustly enriched Starz at Charter's expense." SAC ¶ 34.

The UCL applies to any unlawful business act or practice committed in California. Cal. Bus. & Prof. Code § 17200; Sullivan v. Oracle Corp., 254 P.3d 237, 248 (Cal. 2011). An "unlawful" business act under section 17200 is any business practice that is prohibited by law, whether "civil or criminal, statutory or *judicially made* . . . federal, state or local." S. Cal. Inst. of Law v. TCS Educ. Sys., 2011 WL 1296602, at *10 (C.D. Cal. April 5, 2011) (citing McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1474 (2006)) (emphasis added). Therefore, a breach of common law fiduciary duty may serve as a basis for a UCL claim.

Plaintiff alleges, on information and belief, that Maffei was in Los Angeles, California on the weekend of April 26-27, 2014, when the Charter/Comcast deal was secured. SAC ¶ 35. Plaintiff also alleges that Maffei breached his fiduciary duty to Charter the weekend of April 26-27, 2014 because Thornton stated that Thornton and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
|---|---|---|---|
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

Maffei conspired to manipulate the Charter/Comcast deal to get Comcast to extend its Starz affiliate carriage deal and remarked that "we got the extension done over the weekend." Id. ¶ 33. It is reasonable to infer from plaintiff's SAC that Maffei's alleged breach of fiduciary duty occurred in California and is therefore within reach of the UCL.

Accordingly, the Court finds that plaintiff has adequately alleged that he disclosed a violation of law.[8]

### 2. Adverse Employment Action

To make a retaliation claim pursuant to section 1102.5(b), plaintiff must allege that he suffered an adverse employment action. Plaintiff states that after he made disclosures about Maffei's alleged illegal conduct to Waysdorf, Thornton and other Starz executives excluded plaintiff from meetings and emails and Starz eventually terminated plaintiff. SAC ¶¶ 49, 70. The Court finds that plaintiff therefore adequately alleged an adverse employment action. See Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004) (termination is an adverse employment action); Horsford v. Bd. of Trustees of Cal. State Univ., 132 Cal. App. 4th 359, 374 (2005) (eliminating job duties that are essential to an employee's career path is an adverse employment action); Patten v. Grant Joint Union High Sch. Dist., 134 Cal. App. 4th 1378, 1390 (changing job responsibilities in a way that undermines employee's opportunities for professional growth is an adverse employment action).

### 3. Causal Link between Plaintiff's Disclosure and Termination

Plaintiff's section 1102.5(b) retaliation claim must also allege that he experienced an adverse employment action *because* of his protected activity. The causal link between engagement in a protected activity and an employer's retaliation through an adverse employment action may be inferred from circumstantial evidence, such as the employer's

---

[8] Having determined that plaintiff sufficiently pleaded his section 1102.5(b) claim by disclosing alleged violations of the UCL, the Court need not consider plaintiff's additional arguments that defendants retaliated because plaintiff discussed Maffei's alleged violations of his common law fiduciary duty and of California Corporations Code § 309(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Ferretti v. Pfeizer, Inc., 2013 WL 140088, at *10 (N.D. Cal. Jan. 10, 2013) (citing Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000)).

"[F]or the purposes of causation, it is sufficient that at least one of the persons responsible for making each adverse employment decision had knowledge that Plaintiff had engaged in protected activity." Id. Plaintiff contends that because Waysdorf became concerned about the legality of Maffei's conduct in light of plaintiff's disclosure, it was "highly likely" that Waysdorf later communicated his conversation with plaintiff to Thornton. SAC ¶ 41. Additionally, plaintiff avers that his concerns about Maffei's alleged illegal conduct were "well-known" because of his "willingness" to complain about the legality of the Charter/Comcast deal to Ed Huguez, Jennifer Schouten, Tom Gove, Tom Wenzel, Randy McCurdy, Richard Waysdorf, David Weil, Scott MacDonald, Todd Hoy, and Thornton himself. Id. ¶ 42. Plaintiff thus alleges that, at least, Thornton "had knowledge that [p]laintiff engaged in protected activity." Ferretti, 2013 WL 140088, at *10. Since Thornton was plaintiff's supervisor, it is reasonable to infer that Thornton was "one of the persons responsible for making [the] adverse employment decision." Id. Therefore, plaintiff has adequately alleged a causal link through the employer's knowledge.

Plaintiff also avers that he made the protected disclosure in August 2014 and was subsequently terminated two months later, in October 2014. Id. ¶ 70. Courts have found a temporal proximity of as long as four or five months to be sufficient to show retaliation. See, e.g., Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir. 1989) (retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.); Flait v. North American Watch Corp., 3 Cal. App. 4th 467, 478 (1992) (retaliation pursuant to California's Fair Employment and Housing Act, Cal. Gov't Code § 12940 et seq.). Therefore, plaintiff has also adequately alleged a causal link through temporal proximity.

Accordingly, the Court finds that because plaintiff has adequately alleged (1) engagement in a protected activity, (2) an adverse employment action, and (3) a causal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09239-CAS(AFMx) | Date | September 26, 2016 |
| Title | KENO V. THOMAS v. STARZ ENTERTAINMENT LLC, ET AL. | | |

link between the activity and the adverse action, plaintiff has pleaded a plausible claim of retaliation pursuant to section 1102.5(b).[9]

## V. CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has sufficiently pleaded his section 1102.5(b) claim and Starz's motion to dismiss plaintiff's first claim of retaliation is **DENIED**.

| | 00 : 11 |
|---|---|
| Initials of Preparer | CMJ |

---

[9] Plaintiff also alleges anticipatory retaliation as a basis for his section 1102.5(b) claim. SAC ¶¶ 43-44. Because the Court finds that plaintiff has sufficiently pleaded retaliation based on plaintiff's alleged disclosures regarding Maffei's alleged illegal conduct, the Court need not address anticipatory retaliation.